IN THE COMMONWEALTH COURT OF PENNSYLVANIA

House 2 Home, LLC,                  :
                    Appellant       :
                                    :
        v.                          :       No. 1446 C.D. 2022
                                    :       Argued:  November 6, 2023
Zoning Hearing Board of North       :
Coventry Township                   :

BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION
BY SENIOR JUDGE LEAVITT                     FILED:  January 16, 2024


        House 2 Home, LLC (Landowner) appeals the order of the Court of Common Pleas of Chester County (trial court) that affirmed a decision of the Zoning Hearing Board of North Coventry Township (Zoning Board).  Landowner contends that the Zoning Board erred in holding that Landowner had to file a special exception application to add an accessory retail use to the existing manufacturing and processing use of its property.  Landowner further contends that the trial court erred in denying its motion to strike the Zoning Board's brief, to disqualify counsel, and for sanctions.  Concluding that the North Coventry Township Zoning Ordinance (Zoning Ordinance)[1] permits a retail use as of right, when accessory to manufacturing and processing, we reverse the trial court's order that Landowner had to seek a special exception.  However, we affirm the trial court's order denying Landowner's motion to strike the Zoning Board's brief, to disqualify counsel, and for sanctions.

---

[1] North Coventry Township, Pennsylvania, Zoning Ordinance No. 30 (1968), *as amended*, available at https://ecode360.com/11562582#11562582 (last visited January 16, 2024).

**Background**

Landowner owns a 0.31-acre property located at 57 Schuylkill Avenue, Pottstown (Property), which is in the I-2 Industrial District of North Coventry Township (Township). Since 1964, the Property has been leased to tenants engaged in manufacturing and processing, which predated the 1968 enactment of the Zoning Ordinance. The Zoning Ordinance allows manufacturing in the I-2 District by conditional use.

In 2021, Landowner requested a determination from the Township's zoning officer that the Property's use for manufacturing and processing constituted a lawful nonconforming use. The zoning officer did not respond, but the Township's solicitor informed Landowner that the Township did not consider manufacturing to be a lawful nonconforming use of the Property. On September 17, 2021, Landowner filed an application appealing the zoning officer's interpretation of the Zoning Ordinance or, in the alternative, for a variance. With its appeal, Landowner submitted a "narrative in support of zoning appeal & application," stating that the Property has been improved with "an industrial building which has been used for various purposes over a number of years, including manufacturing by multiple tenants." Reproduced Record at 68a (R.R. __). Specifically, Landowner sought "to use the Property for manufacturing and processing (as those terms are defined by the Township's Zoning Ordinance), *with on-site retail sales as an accessory use*." R.R. 69a (emphasis added).

On February 10, 2022, the Zoning Board held a public hearing. The Township was granted intervention to oppose Landowner's appeal. No residents or nearby property owners attended the proceedings or sought intervention.

Landowner presented the testimony of its owner, Joseph Swist. Swist testified that in 2005, when Landowner purchased the Property, the building was occupied by Evans Coolant and Diken Machine Shop, which were small manufacturing businesses. Swist testified that prior to the enactment of the 1968 Zoning Ordinance, the Property was used to manufacture cups and candles and, thereafter, for different manufacturing enterprises by various tenants. Affidavits from the most recent tenants, Kay Designs, LLC and J&F Commercial Products, were admitted into evidence. The affiants stated that they used the Property for the design, manufacture, fabrication, warehousing, and distribution of various products. Kay Designs also used the Property for retail sales of the signs it manufactured there. Notes of Testimony, 2/10/2022, at 48; R.R. 154a. These tenants vacated the Property in December of 2020.

Swist testified that a prospective tenant proposed to use the Property to manufacture and process beverages with a retail outlet on the premises. This prospective tenant proposed to provide outdoor seating for patrons who purchased beverages. The Township informed the prospective tenant that this use would be unlawful, and Landowner lost the prospective tenant. Swist acknowledged that no prior tenant had provided outdoor seating for the consumption of food or beverages.

The Zoning Board found that Landowner established the existence of a "pre-existing, nonconforming manufacturing/fabrication use" and that Landowner could not be compelled to seek conditional use approval to use the Property for "manufacturing or fabrication in the same or similar way it has been used since 1964." Zoning Board Adjudication at 4, Conclusions of Law ¶¶4-5; R.R. 13a. The Zoning Board denied Landowner's alternative request for a variance as unnecessary.

The Zoning Board also held that Landowner could not use the Property for any use other than "manufacturing and/or fabrication," which antedated 1968. Zoning Board Adjudication at 4; R.R. 13a. The Zoning Board determined that

> [Landowner] would need to seek a Special Exception for any desired expansion or any change of use, *including retail sales, or, outdoor dining or beverage consumption*. [Landowner] also has the option of seeking Conditional Use approval pursuant to the provisions of the Township Zoning Ordinance.

Zoning Board Adjudication at 4, Conclusion of Law ¶5; R.R. 13a (emphasis added).

Landowner appealed to the trial court. It argued that the Zoning Board erred in concluding that it had to pursue a special exception application in order to engage in retail sales or to provide outdoor seating. It argued that these activities are accessory to manufacturing and processing and, thus, authorized by right. The Township did not intervene in Landowner's appeal, but the Zoning Board did. Landowner moved to strike the Zoning Board's brief; to disqualify the Zoning Board's counsel; and for the imposition of sanctions.

Landowner's motion to disqualify was based on the claim that the Zoning Board's counsel, Jennifer Holsten Maddaloni, also served as "insurance defense counsel" for the Township. R.R. 295a. When the Township did not timely intervene in the trial court appeal, it attempted to remedy this failure by appointing the Township's existing counsel to defend the Zoning Board's decision. Landowner's motion asserted that it violated due process to allow the same attorney to represent the Zoning Board and the Township, which had opposed the Zoning Board's ultimate decision. *Id*. (citing *Horn v. Hilltown Township*, 337 A.2d 858 (Pa. 1975)).

4

**Trial Court Decision**

By opinion and order dated November 21, 2022, the trial court affirmed the Zoning Board's adjudication. Although the Zoning Ordinance allows a retail use accessory to a manufacturing and processing use, the trial court concluded that the addition of a retail use would constitute "a change in use or expansion of a use," for which "further consideration under the Zoning Ordinance is required." Trial Court Op. at 7. A preexisting, nonconforming use creates a vested property right in the owner of the property, including some expansion. However, Landowner's proposal was "in actuality not an expansion of the old use, but the addition of a new use." Trial Court Op. at 6-7 (quoting *Whitpain Township Board of Supervisors v. Whitpain Township Zoning Hearing Board*, 550 A.2d 1355 (Pa. Cmwlth. 1988)).

By separate order issued on the same day, the trial court denied Landowner's motion to strike the Zoning Board's brief, disqualify its counsel, and impose sanctions. That the Zoning Board's counsel, or her law firm, served as insurance defense counsel for the Township did not disqualify counsel. In so holding, the trial court distinguished the instant case from *Horn*, 337 A.2d 858, in which the zoning board's solicitor, who also represented the township, made objections to the evidence offered by his opponent and then ruled on his own objections.

Landowner appealed to this Court.

**Appeal**

On appeal,[2] Landowner raises four issues for our consideration, which we combine into three for clarity. First, Landowner argues that the Zoning Board

---

[2] Where the trial court does not accept additional evidence, this Court determines on review whether the zoning board committed an error of law or "a manifest abuse of discretion." *Valley View Civic Association v. Zoning Board of Adjustment*, 462 A.2d 637, 639 (Pa. 1983).

erred in categorizing the Property's legal, nonconforming use as "manufacturing and fabrication," rather than "manufacturing and processing," the terms used in the Zoning Ordinance and in Landowner's application. Second, Landowner argues that the trial court erred in holding that a retail use, when accessory to a manufacturing and processing use, requires a special exception or conditional use application. Finally, Landowner argues that the trial court erred in denying its motion to strike the Zoning Board's brief, to disqualify counsel, and for the imposition of sanctions. Landowner asks this Court to vacate the trial court's order and "reverse those portions of the [Zoning] Board's [d]ecision that impose ambiguous designation and illegal restrictions upon the Property." Landowner Brief at 13. We address these issues *seriatim*.

## I.

First, Landowner argues that the Zoning Board erred in categorizing the Property's legal, nonconforming use as "manufacturing and fabrication," rather than "manufacturing and processing." The Zoning Ordinance states that "manufacturing and processing" operations include:

> beverages, confections, and other food products (excluding meat and fish packing), tobacco products, drugs, cosmetics, clothing, light metal processes, plastics, ceramics, electrical devices and appliances, furniture, hardware, tools, dies, patterns, toys, jewelry, optical goods, time pieces, and scientific instruments.

ZONING ORDINANCE, §370-26.B(3)(a). While the term "manufacturing" is undefined in the Zoning Ordinance, "processing" is defined as "[a] function involved in the manufacturing of materials, goods or products in which they are not physically changed except for packaging or sizing." *Id*., §370-9.

6

By contrast, the term "fabrication" is not defined in the Zoning Ordinance. By using an undefined term, Landowner argues, the Zoning Board created a new category of use that divested Landowner "of predictable and consistent application of zoning regulation and enforcement." Landowner Brief at 4.

The Zoning Board counters that "fabricating" falls under the term "manufacturing," which use is specifically delineated in the Zoning Ordinance. Thus, the Zoning Board argues, it did not create a new category of use.

Landowner has waived this issue by not raising it in its statement of errors complained of on appeal. Pennsylvania Rule of Appellate Procedure 1925(b)(4)(vii) provides that "[i]ssues not included in the [s]tatement [of errors complained of on appeal] and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived." PA. R.A.P. 1925(b)(4)(vii). *See also City of Philadelphia v. Lerner*, 151 A.3d 1020, 1024 (Pa. 2016) (reaffirming the "well-settled, bright-line rule" that "issues not raised in a Rule 1925(b) statement will be deemed waived" and holding that "[b]y failing to comply with Rule 1925(b), [the appellant] waived the issue that he . . . request[ed] [the] Court to address").

Accordingly, we will not address Landowner's first issue on the Zoning Board's use of the term "fabricating."[3]

---

[3] The Zoning Board used the term "fabrication" loosely, as a synonym of "processing." The Zoning Board's adjudication switched from the term "processing" to "fabrication" without any explanation. In any event, the parties agree that "fabricating" falls under the term "manufacturing." Landowner Brief at 14; Zoning Board Brief at 6. *See also* MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/fabricating (last visited January 16, 2024) (defining "fabricate" as "construct, manufacture; specifically: to construct from diverse and usually standardized parts"). Likewise, "processing" is "[a] function *involved in the manufacturing of* materials, goods or products in which they are not physically changed except for packaging or sizing." ZONING ORDINANCE, §370-9 (emphasis added).

Where, as here, the clerical error made in the Zoning Board's decision was not material, the trial court's failure to recognize or address the clerical error does not warrant vacating or

**II.**

Landowner argues, next, that the trial court erred in holding that a retail use, when accessory to the permitted use of manufacturing and processing, requires a special exception application. The Zoning Board held that the Property's use for manufacturing and processing constitutes legal, nonconforming uses. Thus, Landowner argues that it is entitled to any accessory use permitted under the Zoning Ordinance, such as retail. Landowner Brief at 16 (citing ZONING ORDINANCE, §370-26.B(4)). Further, the uncontroverted evidence presented to the Zoning Board established that prior tenants engaged in manufacturing and processing that had included a retail component. Landowner further argues that the Zoning Board erred by placing a restriction upon outdoor dining or beverage consumption at the Property by a beverage manufacturer. Landowner Brief at 18-19. A "retail store/trade" is defined in the Zoning Ordinance as an establishment "engaged in selling goods or merchandise to the general public for personal or household consumption *and rendering services incidental to the sale of such goods*, such as, but not limited to hardware store, pharmacy, magazine or book[]store, florist, or clothing store." ZONING ORDINANCE, §370-9 (emphasis added).[4] Landowner contends that providing seating for those who purchase beverages manufactured at the Property is a "service

_____

reversing the trial court's decision. *Cf. Commonwealth v. Karangwa* (Pa. Super., No. 591 WDA 2017, filed May 9, 2018) (unreported) (where the sentencing order erroneously listed criminal offense as third-degree misdemeanor instead of summary offense, Superior Court vacated the trial court's order and remanded the case for limited purpose of correcting the clerical error).

[4] "Retail services" is defined as follows:

> Establishments providing services or entertainment, as opposed to products, to the general public, real estate and insurance, personal service establishments, motion pictures, amusement and recreation service, educational and social services, museums and galleries.

ZONING ORDINANCE, §370-9.

8

incidental to the sale" of beverages and, thus, authorized. Bookstores and clothing stores offer seating as an "incidental service" desired by customers, and there is no reason that a retail beverage outlet cannot also offer seating.

The Zoning Board counters that the right to natural expansion of a nonconforming use is not unlimited. Municipalities may impose reasonable restrictions on the expansion of nonconforming uses. Zoning Board Brief at 3 (citing *Hunterstown Ruritan Club v. Straban Township Zoning Hearing Board*, 143 A.3d 538, 546 (Pa. Cmwlth. 2016)). Landowner offered no details about the proposed sale of beverages with outdoor seating that addressed parking, number of employees, hours of operation, or number of tables. These matters were pertinent because the Zoning Board needed this information to evaluate whether a retail sale of beverages constituted a change or mere expansion of the nonconforming manufacturing use. Based on the limited evidence presented, the Zoning Board's order was necessary to clarify that Landowner did not have unfettered ability to put the Property to a future use that would constitute a change to the prior nonconforming use.

The Zoning Board also contends that while the Zoning Ordinance permits a retail use accessory to manufacturing and processing, it also imposes limitations on the accessory use. Landowner presented no evidence that a future tenant would comply with said limitations. In any event, seating would change the nonconforming manufacturing use because neither retail nor outdoor seating existed on the Property at the time the Zoning Ordinance was enacted in 1968.

We start with a review of the relevant provisions of the Zoning Ordinance. Section 370-26.B(4) states:

> Accessory uses. Uses on the same lot, customarily incidental to any of the foregoing uses, *and subject to the provisions of §370-36, shall be permitted. In addition, the following accessory use*

9

*shall be permitted in conjunction with manufacturing and processing uses*:

> (a) Retail outlet for sale of goods produced on the property, provided that the area devoted to such sale of goods does not exceed 20% of the gross floor area of the building and that all other applicable provisions of this chapter are met by both the permitted use and the associated retail activity.

ZONING ORDINANCE, §370-26.B(4) (emphasis added). In turn, Section 370-36, titled "Accessory use," lists a variety of uses that are permitted when incidental and subordinate to agricultural, residential, commercial, and industrial uses. ZONING ORDINANCE, §370-36. It also states that certain accessory uses require a conditional use or special exception approval. For instance, a personal use airport "may be allowed as a use accessory to agriculture in the RC [Resource Conservation] District and the RR [Rural Residential] District" but "must be approved through the conditional use process described in §370-138." ZONING ORDINANCE, §370-36.A(7)(g). Likewise, a helistop "may be allowed as an accessory use in the I-1 and I-2 Industrial districts or as an accessory use to a hospital" and "must be approved through the special exception process described in §370-149." ZONING ORDINANCE, §370-36.C(5)(d).

By contrast, the Zoning Ordinance states a "retail outlet for sale of goods produced on the property" is accessory to manufacturing and processing and "*shall be permitted*." ZONING ORDINANCE, §370-26.B(4)(a) (emphasis added). The Zoning Ordinance does not state that every retail accessory use requires a conditional use or special exception application.

Where "the legislature includes specific language in one section of a statute and excludes it from another, it should not be implied where excluded." *West Penn Allegheny Health System v. Medical Care Availability and Reduction of Error*

10

*Fund*, 11 A.3d 598, 606 (Pa. Cmwlth. 2010). "[T]he rules of statutory construction are applied to zoning ordinances with equal force and effect." *Metal Green Inc. v. City of Philadelphia*, 266 A.3d 495, 507 (Pa. 2021).

The Zoning Board contends that the Zoning Ordinance requires a special exception for any change or expansion of a nonconforming manufacturing use. Section 370-121 states, in pertinent part, as follows:

> A. Expansion. The nonconforming use of a building or of a lot shall not be expanded so as to use other portions of the building or lot and a nonconforming building housing a nonconforming or permitted use shall not be expanded or structurally altered, except insofar as is permitted by law to assure the structural safety of the building; unless the Zoning Hearing Board shall, by special exception as hereinafter provided, authorize the expansion of such use or building. The Zoning Hearing Board, upon proper application, may grant such special exception, provided that:
>
> > (1) It is clear that such expansion is not materially detrimental to the character of the surrounding area or to the interest of the municipality.
> >
> > (2) The area devoted to the nonconforming use shall not be increased more than once during the life of the use. In addition, the area devoted to the nonconforming use shall not be increased more than 50% above its original size.
> >
> > (3) Any expansion of the building or of a lot having a nonconforming use shall conform to all applicable area and bulk regulations of the district in which it is situated and to all regulations applicable to such a use in the district or districts.
> >
> > (4) Any expansion of a nonconforming use must meet the off-street parking and buffering requirements of Article XI, herein.
>
> B. Change of use.
>
> > (1) A nonconforming use may be changed to another nonconforming use by the grant of a special exception

11

only upon determination by the Zoning Hearing Board, after public hearing, that the proposed new use will be similar to or less detrimental to its neighborhood and abutting properties than is the use it is to replace. In evaluating relative detriment, the Zoning Hearing Board shall take into consideration, among other things: potential traffic generation; nuisance characteristics such as emission of noise, dust, odor, glare and smoke; fire hazards; and hours and manner of operation.

(2) Once changed to a conforming use, no structure or land shall be permitted to revert to a nonconforming use.

ZONING ORDINANCE, §370-121.

A municipality has every right to impose reasonable restrictions upon the lawful expansion of a nonconforming use. *See Hunterstown Ruritan Club*, 143 A.3d at 546. However, Landowner was not seeking to "expand" or "change" the manufacturing and processing uses. Rather, Landowner's application to the Zoning Board stated that it was seeking "to use the Property for manufacturing and processing (as those terms are defined by the Township's Zoning Ordinance), *with on-site retail sales as an accessory use*." R.R. 69a (emphasis added). Adding an accessory use permitted as of right under the Zoning Ordinance does not, in itself, constitute an expansion of or change to the principal use. This is because an accessory use is "of a nature *customarily incidental and subordinate to, the principal use*[.]" ZONING ORDINANCE, §370-9 (emphasis added). *See also* McQuillin, THE LAW OF MUNICIPAL CORPORATIONS §25:154 (3d ed. 2023) (accessory use is not in the nature of a variance from, or exception to the permitted primary use; generally, an owner seeking to engage in an accessory use need not apply for a special exception so long as the accessory use is incidental to a permitted principal use).

More to the point, a use accessory to a nonconforming use has the same vested right to continue as is afforded to the main use. In *Hempfield Township v.*

*Hapchuk*, 620 A.2d 668 (Pa. Cmwlth. 1993), we held that an amendment to a zoning ordinance could not bar the placement of sewage sludge on property continuously used for agricultural purposes because this activity constituted an ancillary agricultural use. By contrast, in *Arter v. Philadelphia Zoning Board of Adjustment*, 916 A.2d 1222 (Pa. Cmwlth. 2007), we held that the property owner was not entitled to develop a funeral home and crematory on the grounds of an existing cemetery as an accessory use. We reasoned that a funeral home and crematory were neither secondary nor subordinate to a cemetery use but, instead, constituted new primary uses.

The Zoning Board contends that because Landowner did not provide details about the potential retail sales of beverages manufactured on the Property, it was compelled to order Landowner to seek a conditional use application for any accessory retail use. However, it is the express terms of the Zoning Ordinance that determine whether a special exception or conditional use application is needed for a particular use. The Zoning Ordinance authorizes the Township to initiate enforcement proceedings when "a violation of any provisions of this Zoning Chapter occurs." ZONING ORDINANCE, §370-129.B. Should the Township discover that on-site retail sales are no longer accessory to a manufacturing and processing use of the Property in violation of Section 370-26.B(4) of the Zoning Ordinance, it may initiate an enforcement proceeding under Section 370-129.B. The Township, however, is not allowed to impose restrictions upon a use permitted by right absent a firm foundation in the text of the Zoning Ordinance.

The trial court erred. It held that a retail use was permitted by right as accessory to manufacturing and processing but then added, impermissibly, the requirement that a retail accessory use required a special exception or conditional

13

use application.  The Zoning Ordinance does not contain such a requirement for a retail accessory use, as it does for some accessory uses, such as a helistop.  Further, simply providing outdoor seating for beverage consumption is a "service" incidental to retail sale of beverages manufactured on the Property.  Service incidental to a retail use, such as providing seats, is included in the "retail store/trade" definition. ZONING ORDINANCE, §370-9.  Landowner's accessory retail use cannot exceed what is allowed under the Zoning Ordinance.  Should it do so, the Township can respond.

### III.

Finally, Landowner argues that the trial court erred in denying its motion to strike the Zoning Board's brief, to disqualify counsel, and for sanctions. The Township did not intervene in Landowner's appeal to the trial court but, rather, appointed Attorney Maddaloni to defend the decision of the Zoning Board, and her firm, Holsten Associates P.C., served as insurance defense counsel for the Township. Landowner contends that in doing so, the Township circumvented the Pennsylvania Rules of Civil Procedure and Section 1004-A of the Pennsylvania Municipalities Planning Code.[5]  This, Landowner contends, is "procedurally and substantively improper."  Landowner Brief at 23.  The trial court denied Landowner's motion just six days later, before Maddaloni filed a response, and without explanation.

---

[5] Act of July 31, 1968, P.L. 805, *as amended*, added by the Act of December 21, 1988, P.L. 1329, 53 P.S. §11004-A.  It states:

> Within the 30 days first following the filing of a land use appeal, if the appeal is from a board or agency of a municipality, the municipality and any owner or tenant of property directly involved in the action appealed from may intervene as of course by filing a notice of intervention, accompanied by proof of service of the same, upon each appellant or each appellant's counsel of record. All other intervention shall be governed by the Pennsylvania Rules of Civil Procedure.

*Id*.

14

The Zoning Board responds that neither its counsel nor her firm has represented the Township in this case or any other action. The trial court correctly distinguished the instant case from *Horn*, 337 A.2d 858, because counsel did not represent the Township and the Zoning Board at the same time. The Zoning Board denied that its counsel or her firm ever served as insurance defense counsel for the Township, or that the Township appointed counsel to the Zoning Board. Rather, the Zoning Board contends, counsel was retained to represent the Board and reports to the Board, not the Township.

Landowner's motion essentially asserted a conflict of interest. Before this Court, the Zoning Board asserts that counsel and her firm did not represent the Township, which Landowner disputes. This, however, does not warrant a remand of the matter to the trial court for a factual finding.

The trial court correctly distinguished the instant case from *Horn*, 337 A.2d 858. In that case, the Supreme Court held that where at a zoning board hearing, the same solicitor represented both the zoning hearing board and the township, which was opposed to the landowner's land use application, the representation violated landowner's due process rights. In other words, one cannot serve as both the advocate and adjudicator. By contrast, here, Landowner's motion did not make such allegations; rather, the motion acknowledged that at the Zoning Board hearing, the Zoning Board's solicitor was Kenneth Picardi of the firm Yergey Daylor, and the Township's counsel was Eric Brown of the firm Siana Law. R.R. 293a. Landowner's motion took issue with Attorney Maddaloni, who represented the Zoning Board before the trial court. However, at that point, the Zoning Board's interest aligned with the Township; both opposed Landowner's proposed retail use

15

as accessory by right to manufacturing and processing. In short, Landowner's motion did not make a case on either a conflict of interest or due process violation.

## Conclusion

We conclude that Landowner waived its first issue that the Zoning Board created a new category of use, *i.e.*, "fabrication," without authority. We conclude, and hold, that the trial court erred in holding that a retail use accessory to the lawful, nonconforming manufacturing and processing use required a special exception or conditional use approval. The Zoning Ordinance does not impose such a requirement. For this reason, we reverse the trial court's order affirming the Zoning Board's decision. We conclude, however, that the trial court properly denied Landowner's motion to strike the Zoning Board's brief, to disqualify counsel, and for sanctions because the motion did not make a case for a due process violation or conflict of interest. As such, we affirm the trial court's order denying Landowner's motion to strike brief, to disqualify counsel, and for sanctions.


_____
MARY HANNAH LEAVITT, President Judge Emerita


Judge Fizzano Cannon did not participate in the decision in this case.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

House 2 Home, LLC,                        :
                    Appellant             :
                                          :
        v.                                :       No. 1446 C.D. 2022
                                          :
Zoning Hearing Board of North             :
Coventry Township                         :

# **O R D E R**

AND NOW, this 16th day of January, 2024, the order of the Court of Common Pleas of Chester County in the above-captioned matter, dated November 21, 2022, affirming the Zoning Hearing Board of North Coventry Township's decision, is REVERSED. The Court of Common Pleas of Chester County's order dated November 21, 2022, denying House 2 Home, LLC's motion to strike the Zoning Hearing Board of North Coventry Township's brief, to disqualify counsel, and for sanctions, is AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge Emerita