Daniel BAER and Pearl
E. Baer, Appellants,

v.

ZONING HEARING BOARD OF
QUINCY TOWNSHIP and
Quincy Township.

Commonwealth Court of Pennsylvania.

Argued April 3, 2001.
Decided Aug. 15, 2001.

Douglas Robert Roeder, Chambersburg, for appellants.

Steven R. Williams, Harrisburg, for appellee, Quincy Township.

Before FRIEDMAN, J., LEADBETTER, J., and McCLOSKEY, Senior Judge.

LEADBETTER, Judge.[1]

Daniel Baer, as attorney-in-fact on behalf of his mother, Pearl E. Baer,[2] appeals from the order of the court of common pleas affirming the decisions of the Zoning Hearing Board of Quincy Township (ZHB), which sustained two enforcement notices issued against the Baer property. We affirm.

Pearl E. Baer owned 83.7 acres, purchased in 1942, on which her son Daniel operates an auto repair/restoration business and a bus/van transport business. Pursuant to the zoning ordinance enacted in 1983, the property is located in the Conservation and Highway Setback Districts, where the businesses are not permitted uses. There is no dispute that

---

1. This case was reassigned to the author on June 5, 2001.

2. At the time of the ZHB hearing, Pearl Baer required nursing home care and is now deceased.

Pearl and her husband began these businesses before the enactment of the zoning ordinance and, therefore, Daniel is entitled to maintain them as pre-existing nonconforming uses. The dispute is twofold. The first is whether the Township may regulate the outdoor storage of inoperable vehicles, auto parts and tires pursuant to the 1983 ordinance. The second is whether Baer unlawfully expanded his bus/van transport business without obtaining a special exception.

On August 10, 1999, the zoning enforcement officer, William Geesaman, issued two enforcement notices. One notice alleged a violation of Section 9.2 of the zoning ordinance, which prohibits maintenance of a junkyard without a license.[3] A "junkyard" is defined in the ordinance as: "any place where junk is stored, disposed of, or accumulated. More than two (2) non-registered, inoperable or dismantled automobiles not housed in buildings on the same premises shall constitute a junkyard."[4] The notice stated that the Baers "have created a junkyard by storing numerous dismantled and nonoperable vehicles, as well as numerous tires, on the subject premises." The second notice alleged a violation of Section 6.1 of the zoning ordinance. Section 6.1 directs, in pertinent part: "Any non-conforming use of structure or land or combination thereof may be expanded or changed only upon approval of the Zoning Hearing Board after a special exception hearing as defined elsewhere in this Ordinance." The notice stated that, "At the time of adoption of the Quincy Township Zoning Ordinance a bus transportation business was in operation on this property.... Daniel Baer has greatly expanded said business without any approval from the Quincy Zoning Hearing Board."

Baer appealed both notices to the ZHB. At the hearing thereon, Baer testified that his parents, Pearl and Chester, maintained several businesses on the property in the 1960's and 1970's. In a building constructed in 1962, the Baers operated a welding business for repair of autos and farm machinery. In 1963, they added a small grocery and hardware store; in 1964, they added retail gasoline sales and more comprehensive auto repairs; and, in 1967, they leased a portion of the service garage to a tire sales and repair business. In addition to these businesses, the Baers also maintained the school bus contract business started by the elder Mr. Baer in 1955. The Baers kept the school busses in repair and drove the routes. In 1977 and 1981, the school bus operations grew when the Baers took over the business of two local contractors. In conjunction with the Baers' businesses, there has been present on the property some cars and busses in need of repairs, some vehicles and parts for making the repairs and parked busses. As time passed, the family scaled back the grocery, hardware and gasoline sales. Daniel Baer maintains the property where he continues to operate the vehicle repair/restoration business and the bus/van transport business.

At the hearing, Baer admitted that approximately 100 vehicles were present on the property and approximately ten of the vehicles stored outdoors were non-regis-

---

3. Section 9.2 of the zoning ordinance states, in pertinent part: "No person shall engage in business as a junk dealer or maintain a junkyard without first having obtained a license from the Board...." Quincy Township Zoning Ordinance, Section 9.2.

4. The Quincy Township Zoning Ordinance defines "dismantled and inoperable vehicle" as: "A vehicle which does not display the current Pennsylvania State Inspection Certification or is manifestly incapable of being locomotive in its existing condition." Quincy Township Zoning Ordinance, Section 1.5.

tered, inoperable, or dismantled. Baer further stated, as did witnesses testifying on his behalf, that since 1983 there has been an increase in the number of vehicles on the property, autos in various states of repair and parked busses/vans. During questioning by his attorney, Baer admitted that his businesses, particularly the bus/van transport, had gradually increased since 1983. On behalf of the Township, zoning officer Geesaman testified regarding a series of photographs he had taken that documented the conditions he had observed on the property, including vehicles surrounded by high weeds, piles of tires and assorted metal parts.

Based upon this evidence, the ZHB found that junkyard conditions existed on the property, that Baer had failed to obtain a license to maintain these conditions and, therefore, he had violated Section 9.2 of the zoning ordinance. For this reason, the ZHB sustained the first enforcement notice. The ZHB issued a separate decision in which it found that Baer had expanded his bus/van business, that he now parked these vehicles on land formerly used for farming and that this expansion required special exception approval, which Baer had not obtained. Therefore, it sustained the second violation notice. Then, gratuitously, the ZHB denied a special exception on the ground that the expansion would adversely affect the public health, safety, and welfare.

In his appeal to common pleas, Baer contended that the presence on the property of autos, auto parts and tires is not a junkyard subject to the licensing requirement but rather is an adjunct to his pre-existing nonconforming businesses. Baer further contended that the expansion of the bus transportation business was either negligible and thus did not require special

exception approval, or was entitled to approval because the evidence was insufficient to support the finding that expansion is detrimental to the public.

After consolidating the appeals, common pleas issued a single opinion and order affirming the ZHB. Common pleas held that sufficient evidence supported the finding that Baer maintained junkyard conditions and that the pre-existing nonconforming auto repair/restoration business could "not be used as a pre-text for converting the property into [an unlicensed] junkyard, in violation of the ordinance." *Baer v. Zoning Hearing Bd.,* (Nos. A.D. 1999–40218 and 40219, filed June 27, 2000), slip op. at 13. With respect to the expansion of the bus/van transport business, common pleas agreed with Baer that no evidence supported the ZHB's statement that "approving the requested special exception would adversely effect [sic] the public health, safety and welfare." *Id.* at 9. Nevertheless, common pleas affirmed the ZHB because sufficient evidence supported the ZHB's finding that the bus/van transport business had expanded and Baer violated the ordinance when he failed to obtain special exception approval for the expansion.

■ In the present appeal, Baer first argues that he cannot be subject to the junkyard license requirement under the 1983 ordinance because the junkyard has always been necessary to the operation of his pre-existing nonconforming auto repair/restoration business. We disagree. The junkyard conditions Baer permits to exist in association with his repair/restoration business must be licensed regardless of Baer's right to the continuation and natural expansion of the auto repair business.[5] It is true, as Baer asserts, that a municipality cannot extinguish a right to

---

5. Although there are no findings on the issue by the ZHB, it would appear from the record

that at least some junkyard conditions predated the ordinance and have been associated

maintain a pre-existing nonconforming use by subsequent zoning regulation. *Clanton v. London Grove Township Zoning Hearing Bd.*, 743 A.2d 995, 997 (Pa.Cmwlth. 1999). However, conditions on the land associated with the protected use, such as the present junkyard conditions, may be subject to licensing and reasonable regulation. *See Commonwealth v. Huffman*, 147 Pa.Cmwlth. 630, 608 A.2d 1118, 1121 (1992). Baer is not deprived of his right to operate the present businesses by requiring that he obtain a license to maintain the junkyard conditions and adhere to reasonable regulations designed to mitigate conditions that may pose a threat to public health, safety and welfare.

█ Baer's second argument is that he is entitled to a special exception to expand

with Baer's businesses since their inception. Assuming this to be true, it does not necessarily follow that Baer has a right to expand those conditions. In this regard, it is important to distinguish between a junkyard *use*, a business operation entitled to continuation and natural expansion under the pre-existing nonconforming use doctrine, and the junkyard *conditions* associated with Baer's vehicle repair/restoration business use. The distinction is between a valuable primary use and mere conditions, such as trash storage, junk accumulation, weed growth, or the size and location of structures, that while natural or even necessary to the primary use are secondary incidents of little or no inherent value.

The difference is crucial to the proper application of the pre-existing use doctrine in light of the principle underpinning the protections it affords. The pre-existing nonconforming use doctrine is premised on the concern that a retroactive enforcement of zoning to extinguish a use that was legal at the time it came into existence may amount to a taking without compensation. *Hanna v. Bd. of Adjustment*, 408 Pa. 306, 312, 183 A.2d 539, 543 (1962). The full scope of protection afforded under the doctrine, *i.e.*, continuation of a use *and its natural expansion*, is properly applicable to the specific business purposes or enterprises for which Baer used the property when the prohibitory ordinance was enacted. *See*

parking for the bus/van transport business. We decline to reach the merits of this issue. In his appeal from the violation notices, Baer neither requested nor attempted to prove the elements prerequisite to special exception approval.[6] On the Township's form for requesting a hearing before the ZHB, Baer marked the space indicating he "appealed the action of the zoning officer." He indicated that a special exception was not required because "only negligible expansion of the nonconforming uses has taken place since the enactment of the above zoning ordinance." Baer did not request a special exception by marking the line specifically provided on the form and he marked "not applicable" in the portion of the form provided for setting forth the grounds supporting enti-

*Sico v. Indiana Township Zoning Hearing Bd.*, 166 Pa.Cmwlth. 321, 646 A.2d 655, 660 (1994) ("The doctrine of natural expansion ... applies only to nonconforming business uses"). *See also* Ryan, Pennsylvania Zoning Law, §§ 7.1.8 and 7.7.1 (recognizing that most, if not all lawfully pre-existing nonconformaties receive some protection under Pennsylvania law and that the scope of protection is subject to obvious differences between nonconforming uses and nonconforming structures). The doctrine was never meant to allow for the expansion of nonconforming conditions, such as Baer's accumulation of junk, oversize structures or encroachment into setbacks. *See Constantino v. Forest Hills Borough*, 128 Pa.Cmwlth. 407, 563 A.2d 953 (1989) (holding that shrubbery exceeding the height limit imposed by subsequent ordinance not protected as a pre-existing nonconformity). *See also Chartiers Township v. W.H. Martin, Inc.*, 518 Pa. 181, 188 n. 3, 542 A.2d 985, 989 n. 3 (1988)("doctrine of natural expansion does not apply to dimensional, space, lot size, design, structural or aesthetic restrictions of a nonconforming use as prescribed by a zoning ordinance").

6. This is not to say that Baer could not have requested a special exception in the same proceeding in which he challenged the violation notices, only that he did not do so.

tlement to a special exception. At the hearing before the ZHB, Baer submitted evidence only in support of his contention that the expansion of his bus/transport business was so minimal as not to require a special exception. He did not attempt to prove the elements necessary to obtain special exception approval; that is, compliance with specific objective requirements imposed under the ordinance.[7] *See* Municipalities Planning Code (MPC), 53 P.S. § 10912.1.[8]

∎ While on appeal Baer argues that there was a lack of substantial evidence to support the ZHB's finding that the expansion of his business would be detrimental to the public health, safety and welfare, he overlooks the fact that the ordinance placed the burden of proof with respect to this issue, as well as other objective criteria, on the applicant. If we were to accept Baer's invitation to review the merits of the ZHB's denial of a special exception, we would be forced to conclude that he failed to meet his burden. Nonetheless, the ZHB erred when it reached out to decide an issue, which was not before it, thereby penalizing Baer for failing to meet a burden of proof, which he had not undertaken. Accordingly, its decision in this regard is a

nullity and shall have no effect in any future proceedings concerning Baer's entitlement to a special exception to expand his businesses.

∎ The matter litigated by the parties, and therefore actually before the ZHB for decision, was whether the zoning officer properly issued the enforcement notice. The ZHB was called upon to determine only whether Baer's bus/van transport business was a pre-existing nonconforming use, whether this business had expanded after the enactment of the ordinance and whether Baer had obtained special exception approval for expansion. As common pleas found, there was sufficient evidence to sustain the ZHB's determination that Baer had expanded the pre-existing nonconforming business without special exception approval. Thus, it appropriately affirmed the ZHB's action in sustaining the enforcement notice.

Accordingly, we affirm.

### ORDER

And now this 15th day of August, 2001, the order of the Court of Common Pleas of the 39th Judicial District (Franklin County

---

7. Section 6.1.C of the ordinance provides, in pertinent part:
    2. *Standards:* Each application for an expansion or change of a non-conforming use shall be subject to the following standards:
    a. It shall be the responsibility of the applicant to sufficiently document to the Zoning Hearing Board that the proposed expansion or change will not be contrary to the purposes of this Ordinance and the public health, safety and welfare of Township residents in general and of the residents of the immediate area, in particular.
    b. Such expansion or change shall not be applicable beyond the lot lines existing on the date this Ordinance or its subsequent amendments were adopted.
    c. Such expansion or change shall comply with the applicable yard and setback require-

ments and height regulations of the district where located. . . .
Quincy Township Zoning Ordinance, Section 6.1.C

8. Act of July 31, 1968, P.L. 805, § 912.1, *as amended*, 53 P.S. § 10912.1. The exercise by the ZHB of its jurisdiction to adjudicate an application for a special exception is regulated under Section 912.1 of the MPC, which provides, in pertinent part, that, "[w]here the governing body, in the zoning ordinance, has stated special exceptions to be granted or denied by the board pursuant to express standards and criteria, the board shall hear and decide requests for such special exceptions in accordance with such standards and criteria." 53 P.S. § 10912.1.

Branch) in the above captioned matter is hereby AFFIRMED.

FRIEDMAN, Judge, Concurring and Dissenting.

I agree with the majority that Daniel Baer and Pearl E. Baer (Appellants) violated section 9.2 of the Quincy Township Zoning Ordinance (Ordinance) by maintaining a junkyard without a license. However, I do *not* agree that Appellants violated section 6.1(C) of the Ordinance by expanding a non-conforming use without obtaining a special exception from the Zoning Hearing Board (ZHB). Thus, unlike the majority, I would affirm in part and reverse in part the trial court's June 27, 2000 order affirming the ZHB's October 18, 1999 decisions.

Appellants own 83.7 acres located at 8766 Wayne Highway, Quincy Township (Township), Franklin County, Pennsylvania. Since the decade of the 1960's, Appellants have operated a bus transportation business on the property. (Trial court op. at 4–5.) Appellants temporarily are parking their buses along the Orphanage Road portion of their lot because it is safer to pull vehicles on and off the road at that location. (ZHB Findings of Fact, No. 9; Trial court op. at 8.) On August 10, 1999, a zoning officer issued an enforcement notice to Appellants alleging that, in relocating the buses, Appellants violated section 6.1 of the Ordinance by expanding a non-conforming use without a special exception. (R.R. at 2a–3a.)

Appellants filed an appeal with the ZHB, arguing that the temporary parking of their buses along Orphanage Road was *not* an expansion of their non-conforming use. Appellants asserted that they simply moved their buses 200 yards from where they previously were parked, and they did it for safety reasons. There was no expansion of the bus transportation business. (R.R. at 161A–62A.) I am persuaded by this argument. Thus, I do not believe that Appellants were required to seek a special exception under section 6.1(C) of the Ordinance.

The majority does not address whether there was an expansion here because the question raised in Appellants' brief is whether the ZHB properly denied Appellants' request for a special exception. The majority declines to address whether the ZHB should have granted a special exception, stating that Appellants never requested a special exception and that the ZHB erroneously treated Appellants' appeal as a request for a special exception. (Majority op. at 601–602.) I disagree.

The Township's "Application for Hearing Before the Zoning Hearing Board" (Application) asks the applicant to identify the "Type of Request." The choices are: (1) special exception; (2) variance; (3) appeal from action of zoning officer; and (4) other. Appellants properly indicated that they were appealing from an action of the zoning officer.[1] (R.R. at 14A.)

The Application then asks for a "Brief Description of Request." Appellants wrote, in pertinent part, as follows: "The Applicants request that they be allowed to continue the existing non-conforming use...." (R.R. at 14A.) The ZHB evidently interpreted these words to mean that, *if* the ZHB concluded that Appellants need a special exception in order to continue their bus transportation business, Appellants are requesting a special exception.

---

1. The majority points out that Appellants failed to fill in the special exception portions of the Township's appeal form. (Majority op. at 601–602.) However, because Appellants received an enforcement notice, Appellants properly indicated that they were appealing from that notice.

Indeed, the ZHB found as a fact that, in filing their appeal, Appellants requested a special exception under section 6.1(C) of the Ordinance.[2] (ZHB's Findings of Fact, No. 4.) Certainly, it was reasonable for the ZHB to read Appellants' Application in this manner.[3] Thus, although I agree with Appellants that they did not need a special exception, I would address Appellants' alternative argument, i.e., that, if required, the ZHB should have granted them a special exception.

Indeed, even if the ZHB erroneously treated Appellants' appeal as a request for a special exception, Appellants relied on this error in raising the issues for this court's review. Thus, the fact that Appellants now challenge the ZHB's denial of a special exception should not prevent this court from addressing that issue. The majority's contrary position penalizes Appellants for the ZHB's error, assuming it was an error, and effectively deprives Appellants of their right to appellate review on the bus parking issue. Because appellate review is a right of constitutional dimensions,[4] there is good reason here *not* to decline to address fully the merits of the special exception issue.

The majority actually does address the merits of the issue in a cursory fashion, in dicta, simply stating that Appellants did not prove the elements necessary to obtain a special exception. (Majority op. at 602.) I disagree. Section 6.1(C) of the Ordinance sets forth the following criteria for a special exception: (1) the proposed expansion will not be contrary to the public health, safety and welfare; and (2) the expansion does not go beyond the lot lines of the property. Here, Appellants presented evidence to show that parking their buses along Orphanage Road is safer for the public *and* that the area along Orphanage Road is within the lot lines of the property. (*See* ZHB's Findings of Fact, Nos. 9, 16, 17, 21.) Therefore, contrary to the majority's statement, Appellants proved the elements necessary to obtain a special exception.

For the foregoing reasons, I would reverse the trial court on the bus parking issue.

**2.** In their appeal to the trial court, Appellants averred multiple times that they requested a special exception. (*See* R.R. at 7A–8A.)

**3.** Although the ZHB's finding was not challenged at any point in the proceedings, the majority now concludes that the record does not contain substantial evidence to support it. I note that, under Pa. R.A.P.1926, a party may file a supplemental record where anything material to the party is omitted from the record. Here, because Appellants would not have known that this court would challenge *sua sponte* an unchallenged ZHB finding, Appellants have lost their opportunity to supplement the record with other evidence that might exist showing that Appellants requested a special exception, e.g., a letter to the ZHB. This is patently unfair to Appellants.

**4.** Article V, section 9 of the Pennsylvania Constitution states that there shall be a right of appeal in all cases from a court of record to an appellate court. Article I, section 11 of the Pennsylvania Constitution states that all courts shall be open and that every person shall have remedy by due course of law for an injury done in lands, goods, person or reputation.