# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Old York Homes One General   :
LLC, trading as Old York Homes   :
One Limited   :
  :
      v.   :  No. 968 C.D. 2017
  :  ARGUED: April 12, 2018
Jeff R. Bressler, d/b/a Jeff's Auto   :
Sales,   :
      Appellant   :


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE ELLEN CEISLER, Judge
           HONORABLE DAN PELLEGRINI, Senior Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE CEISLER                         FILED: May 24, 2018


Jeff R. Bressler, d/b/a Jeff's Auto Sales (Appellant) appeals from the June 20, 2017 Order of the Court of Common Pleas of York County (Trial Court) denying Appellant's motion for post-trial relief against Old York Homes One General LLC, trading as Old York Homes One Limited (Appellee), as an aggrieved owner of real property within Carroll Township (Township).

## I. BACKGROUND

Appellant owns and maintains his principal place of business at 58 Old York Road, Dillsburg, York County, Pennsylvania 17019 (Premises). Tr. Ct. Order, 4/26/17,[1] Stipulated Finding of Fact (S.F.F.) No. 2. His principal business is

---

[1] The Trial Court "Order Granting [Appellee] Relief with a date of April 25, 2017" sets forth Stipulated Findings of Fact, Findings of Fact and Discussion as well as a section entitled

automobile repair, auto body repair, automobile collision repair, and automobile sales business.

In 1982, the Premises was zoned Commercial-Highway (CH). Reproduced Record (R.R.) at 15a, 137a, 142a, 230a. At that time, the Premises was used for an automobile sales and services business. R.R. at 229a-30a.[2]

In 1989, prior to Appellant's purchase of the Premises, the district in which the Premises is located was reclassified as Apartment-Office.[3] Under Apartment-Office zoning, vehicle sales, service stations, and repair garages were not permitted uses. R.R. at 15a, 219a. The business on the Premises continued to operate as a pre-existing non-conforming use. R.R. at 230a.

Appellant leased portions of the Premises between 1990 and 1992 to operate an automobile repairs and service business. R.R. at 137a. During this time, Appellant's business occupied part of the barn located on the Premises. In 1991, the Township issued Appellant a permit to operate his business on the Premises. R.R. at 230a. On or about October 14, 1998, Appellant purchased the entirety of the

---

"Grant of Relief." This Trial Court Order was filed on April 26, 2017. For purposes herein, when quoting from or citing to this document, we will cite or refer to it as "Tr. Ct. Order, 4/26/17" or "Trial Court Order" with the filing date of "April 26, 2017." *See* Pa. R.A.P. 108(b) (pertaining to the date of entry of orders).

[2] Under C-H (Commercial Highway) zoning, in addition to automobile sales and service businesses, *vehicle repair and service* businesses were also permitted as a matter of right in that zoning district. Reproduced Record (R.R.) at 230a.

[3] In the Apartment-Office zoning district, permitted uses included multiple dwellings, professional offices, day care centers, and essential services. Carroll Twp., Pa., Ordinance § 5.1.3 (1989).

2

Premises from the former owner.[4]  Pet'r's Br. at 8; Tr. Ct. Op., 9/29/98, at 2; R.R. at 219a, 230a.

Appellee is a Pennsylvania limited partnership, with its principal office at 225 North Presidential Boulevard, Bala Cynwyd, Pennsylvania 19004.  Appellee owns real property adjacent to the Premises, which it is trying to develop into single-family residential home lots, known as New Windy Heights. Appellee purchased New Windy Heights on or about June 30, 2010, from Windy Heights, LLC.[5]  All properties involved in this case are located in the Township.  Tr. Ct. Order, 4/26/17, S.F.F. Nos. 1, 4, 7-8.

On May 19, 2016, Appellee sold Lot 141 in New Windy Heights, improved with a single-family dwelling, with an address of 1121 Park Avenue, Dillsburg, Pennsylvania 17019 (Lot 141), for $299,900.  Tr. Ct. Order, 4/26/17, S.F.F. No. 5.

## II.    PROCEDURAL HISTORY

Appellant and the Premises have a fairly extensive procedural history related to excessive debris stored on the Premises, which also sheds light on the overall scope of Appellant's non-conforming use.  An explanation of that history is necessary to understand the current legal and procedural posture of this matter.

In 1998, Appellant was cited for storing car parts in unenclosed areas on the Premises.  The Carroll Township Zoning Hearing Board (Board) found Appellant

---

[4] Appellant testified that he leased part of the Premises from the former owner "between 1990 and 1992."  R.R. at 137a.  An opinion from this Court involving the same parties and upholding a zoning enforcement notice identifies the lease date as 1991.  R.R. at 230a; *see also* Tr. Ct. Op., 9/29/98, at 2; R.R. at 219a.

[5] Appellee purchased Windy Heights from the former owner/partnership at the time that the first phase of Windy Heights was one-half completed.  Appellee renamed the development *New* Windy Heights.

3

violated the 1989 zoning ordinance in effect at the time "by storing a large amount of disabled, dismantled or inoperable vehicles in outside, 'open and unenclosed' areas of the barn as an expansion of a non-conforming use." *Bressler and Dobrinoff, Jr. v. Carroll Twp. Zoning Hearing Bd.*, ___ York ___ (C.P. Pa. 1998) (No. 98-SU-00849-08, filed Sept. 29, 1998) at 5; R.R. at 222a. The Trial Court affirmed the decision of the Board, and we affirmed the Trial Court.[6] *Id*. at 4; R.R. at 239a.

In a letter dated July 25, 2001, the Township gave Appellant until July 31, 2001 to come into compliance "with the decision of the various Courts that have heard your case involving Ordinance violations in Carroll Township." R.R. at 18a. The letter required that Appellant store no more than 15 vehicles on the Premises, in any combination of sale or junk vehicles. The letter did not place a cap on "legitimate customer vehicles." *Id*. The letter also requested that the junk vehicles be stored behind the building on the Premises and not visible from the road. *Id*.

In 2002, Appellant filed a special exception under the then-current Township zoning ordinance[7] to expand his pre-existing non-conforming use of the Premises.

---

[6] In that 1998 matter, the Trial Court stated:

> [T]he Township issued another enforcement notice charging [Appellant] with having enlarged and expanded a non[-]conforming use *by the storage of dismantled or disabled vehicles in unenclosed areas* without obtaining a special exception . . . The Township's position is that [Appellant's] operation of an automobile sales and repair business inside the barn may have been a valid non-conforming use, but expanding the business to include storage of dismantled or disabled vehicles *outside* was an improper expansion of a non[-]conforming use, and therefore, a violation of the Township [z]oning [o]rdinance [in effect at the time the Township issued the enforcement notice].

*Bressler and Dobrinoff, Jr. v. Carroll Twp. Zoning Hearing Bd.*, ___ York ___ (C.P. Pa. 1998) (No. 98-SU-00849-08, filed Sept. 29, 1998) (emphasis added); R.R. at 221a.

[7] At the time Appellant filed this special exception, the Premises was zoned A-O. (R.R. at 15a).

4

The relief requested was for Appellant to maintain 30 sales and collision vehicles at the Premises rather than the 15 previously allowed. A hearing was held on August 28, 2002, before the Township. (R.R. at 4a). The Trial Court, in its opinion, noted that "[a]t the time of the Application [to expand his pre-existing non-conforming use], Appellant was limited to having 15 of his vehicles on the property that were for sale or collision repair." Tr. Ct. Op., 9/29/98, at 13. The Trial Court allowed the expansion of Appellant's non-conforming use from 15 to 30 vehicles *for sale or repair*. *Bressler and Dobrinoff, Jr. v. Carroll Twp. Zoning Hearing Bd.*, ___ York ___ (C.P. Pa. 2005) (No. 2002-SU-04985-08, filed June 9, 2005) at 3; R.R. at 16a. It is telling that the Trial Court's decision on expansion of a non-conforming use was limited to vehicles for repair or sale.

In 2005, the Trial Court granted Appellant's 2002 application for a special exception for an expansion of his non-conforming business in the A-O zone. R.R. at 17a. Thereafter, in 2006, the Township enacted a new zoning ordinance (Ordinance). Under the Ordinance, the Premises are now located in a Residential Suburban-2 (RS-2) Zoning District.[8] Tr. Ct. Order, 4/26/17, S.F.F. No. 3; *see also* R.R. at 244a.

The current action originated in the Trial Court by **Complaint in Civil Action** filed by the Appellee against Appellant for Ordinance violations[9] on the Premises. Certified Record (C.R.), Item No. 36, at 1. Appellee asserted that it was an aggrieved

---

[8] Section 204(B) of the Ordinance lists "permitted uses" in an RS-2 district. Certified Record (C.R.), Item No. 16.

[9] Those Ordinance sections are: Section 204B (permitted uses in an RS-2 zone) in conjunction with Section 333 (Junkyards); Section 423 (Unenclosed Storage – vehicular storage, accessory outdoor storage, outdoor stockpiling and trash, garbage or refuse). Carroll Twp., PA, Ordinance, art. 2 §204(B), art. 3 §333, art. 4 §423, (Sept. 27, 2006).

5

party because it was affected by the unsightly conditions of Appellant's Premises and that Section 617 of the Pennsylvania Municipalities Planning Code, 53 P.S. §10617,[10] (MPC), permits "any aggrieved owner . . . of real property who shows that his property . . . will be substantially affected by the alleged violation . . . may institute any appropriate action . . . to prevent, restrain, correct or abate . . . any act, conduct, business or use . . . constituting a violation." 53 P.S. §10617.

Appellee "is an aggrieved owner of adjacent real property and is substantially affected by [Appellant's] violations of the Ordinance because [Appellee] is unable to effectively market and sell lots for residential homes due to [Appellant's] use of the Premises as described herein." *Id*. at 4.

After a trial on Appellee's civil action, the Trial Court decided[11] that Appellant has an established non-conforming use of the Premises that does business consisting of automobile repair, auto body repair, automobile collision repair, and automobile sales. The Trial Court also found that notwithstanding Appellant's non-conforming use, the conditions of the Premises, namely the junkyard conditions, may be the subject of regulation under the Ordinance. C.R., Item No. 12; Conclusion of Law (C.L.), No. 12. Section 617 of the MPC, 53 P.S. §10617, permits a private cause of action for violation of a zoning ordinance. C.R., Item No. 12, at 5.

The Trial Court further concluded that the use of the Premises as a salvage or junkyard is not a permitted use pursuant to Section 333 of the Ordinance[12] and is not

---

[10] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §10617.

[11] By Order filed April 26, 2017.

[12] Section 333 of the Ordinance pertains to junkyards as permitted uses in an RS-2 zone subject to minimum lot area, outdoor area devoted to storage of junk, landscape buffers, storage of junk in buildings and their set-back distance from property lines, and non-visibility of items stored or stacked. Carroll Twp., PA, Ordinance, art. 3 §333; R.R. at 245a.

6

a permitted expansion of the non-conforming use of Appellant's automobile repair and sales business. *Id*. at 5-6; *see also* R.R. at 245a.

The Trial Court ordered Appellant to remove all items of "junk" as that term is defined in the Ordinance; maintain, in appropriate enclosed storage containers, all items of "junk" deposited from time to time by Appellant's business and removed at periodic intervals not exceeding 15 days; and maintain the Premises in accordance with Section 423 of the Ordinance (pertaining to unenclosed storage), with the exception of the number of vehicles permitted to be outside of an enclosed area. The Trial Court order allowed the total number of vehicles permitted to be stored outside of the enclosed building[13] *to include* vehicles owned and operated by Appellant or his business and used for the benefit of Appellant and his business. Tr. Ct. Op., 9/29/98, at 8-9.

Per the Trial Court Order filed on April 26, 2017, Appellant was ordered to remove, within twenty days, a junk school bus, an auto body "crusher," all 'junk' motor vehicles,[14] and other junk car parts that were stored on the Premises for over 60 days, and to count a back hoe as one of the 30 vehicles permitted to be stored outside of the enclosed building. *Id*. at 9.

---

[13] *Prior* court determinations and zoning ordinances allowed a total of 30 vehicles to be stored outside of the enclosed building. C.R., Item No. 36, at 9.

[14] This Trial Court order defined a "junk motor vehicle" as:

> a vehicle intended to be self-propelled which is not operable under its own power for any reason, or a vehicle which is required to be inspected or registered and that does not have a valid current registration plate or that has a certificate of inspection which is more than 60 days beyond the expiration date.

Tr. Ct. Order, 4/26/17, at 9.

The Trial Court Order denied Appellee's request that Appellant install screening or buffering, as this request is not supported by the Ordinance, as well as Appellee's request to award counsel fees, as not being supported by statute. *Id*. at 9-10.

On May 4, 2017, Appellant filed post-trial motions which were denied by the Trial Court on June 20, 2017. C.R., Item Nos. 2, 11. Thereafter, the Trial Court filed a Rule 1925(a) Statement in Support of Decision wherein the Trial Court identified that the reasons for its decision to grant Appellee's petition for relief are found in the Trial Court's Order Granting Plaintiff Relief, filed on April 26, 2017. C.R., Item No. 3.

### III. ISSUES

On appeal,[15] Appellant argues that the Trial Court erred for the following reasons which have been paraphrased and reorganized for sake of clarity:

1. Appellee lacked standing because it was not "'substantially affected' by alleged violations"[16] of the Ordinance;

2. Appellant's non-conforming use of the Premises is not subject to the current Ordinance definition of a "junkyard";

3. The Trial Court does not have the authority to restrict Appellant's non-conforming use of the Premises by imposing the following conditions on the Premises: limiting use of dumpsters to 15 days storage, eliminating the use of an auto body crusher, including Appellant's backhoe as one of his 30 vehicles allowed on the Premises, and improperly limiting the

---

[15] In an appeal from a trial court's decision in a zoning enforcement proceeding, our review is limited to determining whether the trial court committed an abuse of discretion or error of law. *Loganville Borough v. Godfrey*, 59 A.3d 1149 (Pa. Cmwlth. 2012). Our scope of review of a trial court's decision denying a motion for post-trial relief is limited to determining whether the trial court abused its discretion or committed an error of law. *Estate of Blose ex rel. Blose v. Borough of Punxsutawney,* 889 A.2d 653, n.4 (Pa. Cmwlth. 2005).

[16] Appellant's Br. at 4.

8

length of time a vehicle is stored on the Premises to 60 days, and

4. Since Appellant has a right to petition for expansion of his non-conforming use through the Ordinance, the Trial Court erred when it limited Appellant's non-conforming use until further order of Court.

## IV.   DISCUSSION

The first legal issue raised by Appellant is that Appellee did not have "standing" to bring the civil cause of action against Appellant. Appellee argues that Appellant waived his right to argue lack of standing pursuant to Pa. R.C.P. No. 227.1(b)(2) which states that post-trial relief may not be granted unless the grounds for relief "are specified in the motion." The motion shall state how the grounds were asserted in pre-trial proceedings or at trial. Appellee maintains that the factual record is not within the proper scope of review on appeal to this Court. *McShea v. City of Phila.*, 995 A.2d 334, 338 (Pa. 2010) (an appellate court is bound by the trial court's findings of fact). In defense of Appellant's argument that Appellee was not aggrieved, and thus, has no standing, Appellee asserts that while Appellant "clearly desires"[17] this Court to re-examine the factual record, it is not this Court's purview to review portions of the record in order to come to a different actual determination from the trial court.

Here, Appellee presented evidence, established through the testimony at trial of Marc DeSouza and Leslie St. John,[18] that it is an aggrieved property owner and its residential development on land adjacent to the Premises is impacted financially

---

[17] Appellee's Br. at 11.

[18] Marc DeSouza is the Managing Member and partner of Appellee. S.F.F. No. 6.  Leslie St. John is the realtor who markets Appellee's building lots located in New Windy Heights.  R.R. at 80a.

9

by reduced potential sale prices, buyer interest and time on the market. R.R. at 27a-73a, 76a-107a.

Most specifically, Marc DeSouza testified that Appellee's property borders the Premises. He testified that the condition of the Premises does not reflect Appellant's business, which is automobile sales and repairs, but rather the Premises "appears to be more of a junkyard, which is an extreme concern because people drive into our community [that is for sale] and don't want to live [in the community] because there's a junkyard next door." *Id*. at 32a. DeSouza testified that the Premises contains a "car crusher, . . . junk cars, . . . piles of tires, . . . piles of debris and junk that aren't even automotive in nature." R.R. at 49a. He further testified that the Premises also contains an abandoned school bus and box vans containing junk. *Id*. at 50a-51a.

Leslie St. John testified that as a realtor, she relies upon the feedback of buyers and other realtors that come to see a property and this feedback helps her to gauge the interest in a certain market. R.R. at 80a, 83a. St. John testified that after one particular week wherein she had 74 people examine Lot 141 in New Windy Heights, "more than half of them told me directly that . . . I think this house is beautiful. It's got great upgrades. The kitchen's beautiful, but there's no way I would buy it with that view [of the Premises]." *Id*. at 87a. Regarding the other lots in New Windy Heights, St. John testified that "when you take [prospective buyers] over and you walk the lot, their immediate question is, what is that? And you kind of try to sugarcoat, well, it is a used car lot, and you will definitely have people cut you off and say that it doesn't look like [a used car lot]." *Id*. at 88a. When asked if Appellant's business has a direct effect on selling homes in New Windy Heights, St. John stated that it did. *Id*. at 90a. St. John stated that the direct effect "can be the

10

condition of [Appellant's Premises] is usually the number one thing.  It can be in this case the view of [Appellant's Premises].  It could be many different factors, but it usually has to do with the condition of [Appellant's Premises]." *Id*. at 97a.

As a result of this testimony, the Trial Court concluded that Appellee "is an aggrieved owner of real property, which . . . is substantially affected by the unsightly condition of [Appellant's Premises] because [Appellee's] residential development is impacted by reduced potential sale prices, buyer interest and time on the market." Tr. Ct. Order, 4/26/17, at 5.

When Appellant identified these reasons for lack of a lot/home purchase from Appellee,[19] the Trial Court had no clear way of knowing that these were reasons Appellant was objecting to Appellee's standing.  *McShea*.  Thus, Appellant's argument that Appellee was not "substantially affected" by any violations fails.

"Grounds not specified are deemed waived unless leave is granted upon cause shown to specify additional grounds." *Hinkson v. Commonwealth, Dep't of Transp.*, 871 A.2d 301 (Pa. Cmwlth. 2005).  (Because the party's motion for post-trial relief under Pa. R.C. P. No. 227.1 did not state how any of the grounds were asserted in pre-trial proceedings or at trial, that party waived all issues for purposes of appeal.)  As such, Appellee's argument that Appellant waived his right to argue lack of standing is correct, and Appellant's asserted error of standing is waived.

Turning to the next issue, Appellant argues that the non-conforming use of the Premises is not subject to the current Ordinance definition of a "junkyard," and therefore, the Trial Court restricted the use of his Premises beyond that which is permitted by law.  Appellant argues that the Trial Court redefined his non-

---

[19] Listed reasons from Appellee for lack of a lot/home purchase by potential buyers included finding another home at a better price, a garage that was too small for the needs of the potential buyer, and a spouse who was unable to make up her mind on where to buy a house.

11

conforming use to that of automobile repair, auto body repair, automobile collision repair, and automobiles sales without considering the historic business use and non-conforming use of his business. Appellant's Br. at 18-19; Tr. Ct. Order, 4/26/17, C.L., No. 1.  As such, Appellant asserts the Trial Court disregarded the non-conforming nature of his automobile sales and collision business and the necessary supporting conditions and equipment for the business.  Instead, the Trial Court held him to the standards of a junkyard. For these reasons, Appellant argues that the Trial Court does not have the authority to restrict Appellant's non-conforming use of the Premises by limiting use of dumpsters to 15 days of storage; eliminating the use of an auto body crusher; including Appellant's backhoe as one of his 30 vehicles allowed on the Premises; and improperly limiting the length of time a vehicle is stored on the Premises to 60 days.

To this end, Appellant relies on a 2002 Application for Special Exception that was granted by a York County trial judge that granted him the right to expand a pre-existing non-conforming business by allowing the number of stored vehicles on the Premises to be increased from 15 to 30 vehicles.  In the 2005 opinion, the Trial Court[20] stated that Appellant had the right to expand under the Natural Expansion Doctrine[21] because he showed a reasonable need to expand his automobile sales and collision business.  R.R. at 16a.

---

[20] R.R. at 14a-17a.

[21] Under the Natural Expansion Doctrine, a non-conforming use may be expanded in scope as the business increases in magnitude over ground previously occupied by the property owner at the time the ordinance was enacted. *Twp. of Chartiers v. William H. Martin, Inc.*, 542 A.2d 985, 988 (Pa. 1988).  While a municipality cannot *per se* prohibit the natural expansion of a non-conforming use, a property owner's right to expand a non-conforming use is not unlimited. *Silver v. Zoning Bd. of Adjustment*, 255 A.2d 506, 507 (Pa. 1969).  A non-conforming use may not be expanded if the proposed use would have an adverse impact on the public's health, safety, or welfare. *Id.*

Contrary to Appellant's arguments, our Court has held that conditions on land associated with a protected non-conforming use are subject to regulations. *Baer v. Zoning Hearing Bd. of Quincy Twp.*, 782 A.2d 597 (Pa. Cmwlth. 2001). In *Baer*, the property owner operated a non-conforming auto repair/restoration business. The township issued an enforcement notice for the operation of a "junkyard," which is defined as a place where junk is "stored, disposed of, or accumulated" or "more than two (2) non-registered, inoperable or dismantled automobiles not housed in buildings." *Id.* at 599. Evidence showed that the conditions on the property included vehicles surrounded by high weeds, piles of tires, and assorted metal parts. The property owner contended that the condition was an adjunct to his non-conforming business. In *Baer*, this Court rejected the property owner's argument and held that the conditions permitted to exist may be regulated regardless of a right to the continuation of a non-conforming auto repair business. *Id.* at 600-601. The property owner is "not deprived of his right to operate the present business by requiring that he . . . adhere to reasonable regulations designed to mitigate conditions that may pose a threat to public health, safety and welfare." *Id.* at 600-601.

This Court in *Baer* explained the importance between distinguishing between a property use and conditions. "Conditions, such as trash storage, junk accumulation, weed growth, or the size and location of structures, that while natural or even necessary to the primary use are secondary incidents of little or no inherent value." We further stated, "[t]he [pre-existing use] doctrine was never meant to allow for the expansion of non-conforming conditions, such as [the] accumulation of junk." *Id.* at 600 n.5.

Here, the record is replete with evidence that the Premises has also become a junkyard. Appellant stores used tires, (R.R. at 45a, 51a, 169a) maintains piles of

13

junk parts and crushed cars (R.R. 5a, 9a, 13a, 42a, 43a, 44a, 50a, 55a, 120a, 127a, 138a, 141a, 143a, 160a, 207a) inoperable box vans filled with trash (R.R. at 49a, 50a, 51a, 55a, 123a, 152a,167a-69a,) and junk parts, (RR. 44a, 120a,) as well as dumpsters filled with trash and junk parts (R.R. at 23a, 170a).

As the Trial Court properly found, this accumulation is not the by-product of his non-conforming use auto sales and collision repair business, rather it is indicative of junkyard conditions that can be regulated as a junkyard. *Baer*.

Appellant asserts that he is not subject to the permitted and non-permitted uses of the R-S zone in which the Premises is geographically situated. In other words, if he operated a junkyard since his purchase of the Premises in 1992, then he is still entitled to operate the junkyard, notwithstanding the R-S zone designation. *See* Appellant's Br. at i, 4-7, 19, 22, 31.

Appellant also asserts that if his approved non-conforming business, namely automobile repair, auto body repair, automobile collision repair, and automobile sales, results in "junkyard" conditions that are necessary to his non-conforming use, then the overflowing dumpsters with junk auto parts and limitless outdoor storage of both junked vehicles and scrap parts in dumpsters are protected under his non-conforming use and cannot be considered a violation of the Ordinance. Appellant's Br. at 22; R.R. at 146a. In a nutshell, Appellant is arguing that all of the conditions that Appellee claim are an unsightly junkyard are actually part and parcel to his approved non-conforming use.

In the instant matter, the Trial Court recognized and accepted the established non-conforming use of the Premises, which consists of automobile repair, auto body repair, automobile collision repair and automobile sales. Tr. Ct. Order, 4/26/17, C.L., No. 1. The Trial Court further recognized that this business could involve

14

obtaining wrecked vehicles for restoration, repair, and sale. Tr. Ct. Order, 4/26/17, at 7. However, the Trial Court also found "[t]he evidence demonstrated that Appellant has failed to keep the property free of debris in that there are large piles of tires and other debris, open dumpsters filled with trash, trash and refuse stored in open box vans on the property." Tr. Ct. Order, 4/26/17, F.F., No. 14. In essence, the Trial Court found that the Appellee presented compelling and credible evidence that the Premises had essentially become a junkyard. Tr. Ct. Order, 4/26/17, F.F., No. 14; R.R. at 146a-47a, 168a-70a.

Given the significant change in storage by Appellant of his Premises, Appellant failed to meet his burden of proving his non-conforming use included limitless outdoor storage of junked vehicles and limitless storage of scrap parts in dumpsters. The Trial Court did not abuse its discretion in concluding that the storage of junk on the Premises, contained in dumpsters or open box vans on the Premises, is limited to 15 days.

Appellant next argues that the Trial Court erred in eliminating Appellant's use of an auto body crusher on the Premises since this was a necessary part of Appellant's business. Appellant admits that he could remove the stripped cars from the Premises one at a time, but by collapsing them, he could remove several at one time, thereby saving on gasoline. Appellant argues that the Trial Court unduly interfered with Appellant's business judgment and his non-conforming use.

Appellee maintains that Appellant failed to present sufficient evidence at trial that the *scope* of his non-conforming use extended to crushing and demolishing entire cars and that the Appellant is improperly asking this Court to second guess the Trial Court's findings of facts. Specifically, at trial, Appellant's brother testified as

15

to use of the auto body crusher in Appellant's non-conforming business.[22]  The Appellant testified that the car crusher allowed him to haul away several crushed cars at one time which would save him in gasoline costs.

After hearing the Appellant's explanations about the car crusher, the Trial Court found that Appellant's use of this kind of machinery "is inconsistent with the permitted use of automobile repair and automobile sales, and is consistent with use of the [Premises] as a 'junkyard'." C.R., Item No. 12, at 4.  The Trial Court also found that "such hulks [of cars stripped of parts] *could be removed in the same manner as they were brought in,* by tow truck or on the back of a flatbed truck." C.R., Item No. 12, at 7 (emphasis added).

As such, the Trial Court did not abuse its discretion in concluding that Appellant failed to meet his burden of proving his non-conforming use of the Premises included the use of a car crusher.

Appellant next argues that the Trial Court erred because it does not have the authority to include Appellant's backhoe as one of the thirty vehicles permitted on

---

[22] Q. [Atty. Neubaum] Do you have a car crusher at the site?
A. [Greg Bressler] No.
Q. What do you call that piece of equipment?
A. It's – it's kind of an antique, a body crusher.
Q. What does it do?
A. It just – it's about 4 -feet wide and has paddles on it and it just pushes the roof in….it pushed the roof in [of the car] so you can put it on the rollback and remove it.
…
Q. And as part of the process [of getting rid of a junk car], you eventually use the - - I was calling it a car crusher, but I'm happy to call it a body crusher -- you would flatten it down and eventually take those off in the rollbacks to sell for the scrap metal or something like that?
A. They get recycled.

R.R. at 113a, 120a-21a.

16

the Premises by special exception. Appellant maintains that requiring him to count the backhoe as one of the 30 vehicles, constitutes a retroactive change in the non-conforming use of the Premises and amounts to a taking. Appellant asserts the evidence is "clear, and corroborated"[23] that the 30 vehicle limitation applied *only to the auto sales and collision vehicles*. *See* Appellant's Br. at 5, 24.

A closer examination of the 2005 decision described earlier involving the Appellant and the grant of a special exception sheds instructive light on this issue. The June 9, 2005 decision in *Bressler and Dobrinoff, Jr. v. Carroll Twp. Zoning Hearing Bd.*, ___ York ___ (C.P. Pa. 1998) (No. 98-SU-00849-08, filed Sept. 29, 1998) states in pertinent part that:

> Appellant filed an Application for Special Exception to expand a pre-existing non[-]conforming business use in an A-O Zone. Appellant sought to increase *the* total *number of outdoor vehicles* that could be stored on the property from 15 to 30 as part of his business of automobile repair, body shop, and automobile sales.
> . . . .
> At the time of the Application, Appellant was limited to having 15 of his vehicles on the property that were for sale or collision repair. … Moreover, the Appellant has a right to expand his non[-]conforming business and may not have to show a conclusive need to expand that business. … The testimony establishes that … [f]or the foregoing reasons, the Appellant is entitled to a special exception to increase *the number of vehicles* from 15 to 30 *on his property.*

R.R. at 15a-17a (emphasis added).

In the instant matter, the Trial Court relied upon that special exception granted in 2005 in making its determination that is currently on appeal to this Court.

---

[23] Appellant's Br. at 25.

17

THE COURT: If [the special exception is] not in the record, how do we make a decision as to whether or not [Appellant is] operating within a special exception?

ATTORNEY NEUBAUM: I don't think the . . . Board ever issued or the Township ever issued anything subsequent to the [Trial] Court's decision [in 2005] and that becomes a matter of law at that point. The judge directed that it was to be expanded. . . . [and] [t]he application for expansion is hereby granted . . . under those circumstances where [the] . . . Board has been overturned by the Court, the Court decision is the final answer on it and there's nothing really before the . . . Board or the Township at that time other than the Court's decision which becomes part of the final record.

THE COURT: All right.

R.R. at 176a-78a.

Thereafter, the Trial Court concluded that,

[t]he June 9, 2005 . . . decision [in *Bressler and Dobrinoff, Jr. v. Carroll Twp. Zoning Hearing Bd.*, __ York __ (C.P. Pa. 2005)] only permitted, as a special exception, *for the total number* of outdoor vehicles that can be stored on the property to increase from 15 to 30. *It did not describe the nature, purpose,* ownership or condition *of the vehicles.*

Tr. Ct. Order, 4/25/17, at 6-7. The Trial Court further stated:

[n]othing in any of the court cases involving [the Premises] appears to deal specifically with the nature of the automobiles permitted to be stored outside on the property… [i]n that regard then, we conclude *that the number of 30 vehicles permitted by special exception is the total number of vehicles of any nature or type which can be stored* outside on the [Premises].

*Id*. at 8. (Emphasis added.)

*Even by Appellant's own words* in his Application for Special Exception, Appellant's backhoe was counted among the 30 vehicles permitted on the Premises by special exception.

18

As such, the Trial Court did not err in including Appellant's backhoe as one of the thirty vehicles permitted on the Premises by special exception.

Appellant next argues that the Trial Court erred because it restricted appellant's non-conforming use by limiting the length of time an uninspected or unregistered vehicle is stored on the Premises to 60 days. Appellant asserts that because he historically had uninspected vehicles or inspected vehicles on the Premises for up to one year at a time, the Trial Court does not have the authority to restrict this non-conforming use.

Appellant cites this Court's September 20, 2000 Opinion in a related matter involving these same litigants[24] as guidance that the Trial Court does not have the authority to restrict this non-conforming use:

> The Township, however, enacted a new zoning ordinance in 1989, and reclassified the district where the [Premises] is located from C-H to A-O: Apartment-Office. Under the new ordinance, vehicle sales and repair are not a permitted use in the A-O district. The Township, however, informed Owner that he could continue to operate his business despite the zoning change, because the [Premises] was 'being grand-fathered in as a C-H operation in an A-O zone.' Succinctly stated, it was deemed to be a pre[-]existing non[-]conforming use.

Appellant's Br. at 26; *see also* R.R. at 230a.

Appellant maintains that this same Opinion also supports his assertion that as long as Appellant's *combination of* uninspected or inspected *vehicles* does not exceed 30, he is not in violation of the Ordinance:

> The origins of this litigation began in 1994, when the Township issued a zoning enforcement notice to Owner and [Appellant],

---

[24] *Bressler and Dobrinoff, Jr. v. Carroll Twp. Zoning Hearing Bd.*, (No. 2989 C.D. 1998, filed Sept. 20, 2000).

19

charging them with violating Section 5.2.3.5(3) of the Ordinance, which requires repair shops *to store disabled and dismantled vehicles completely within enclosed buildings . . .* Owner and [Appellant] appealed the notice to the [Board], which denied their appeal and confirmed the zoning enforcement notice.... Owner and [Appellant] appealed the [Board's] decision to the [Trial Court]. On December 10, 1996, the [Trial] Court reversed the [Board], concluding that the automobile business was a pre[-]existing non[-]conforming use *and was not subject to Section 5.2.3.5(3) of the Ordinance*. No appeal was taken from that order.

Appellant's Br. at 27 (emphasis in original); *see also* R.R. at 230a-31a.

Consequently, Appellant asserts these holdings established his non-conforming use to include the right to store disabled and dismantled vehicles on the Premises.

Appellee maintains that Appellant failed to meet his burden of proving that his non-conforming use included limitless outdoor storage of junked vehicles and limitless storage of scrap parts in dumpsters.

Again, as stated earlier, Appellant and the Premises have a fairly extensive procedural history related to protracted debris storage on the Premises, which further defines the overall scope of Appellant's non-conforming use as it pertains to storage of disabled and dismantled vehicles outside and not in an enclosed area. It is undisputed that Appellant had an approved non-conforming use automobile repair and sales business, however that non-conforming use did not extend to allowing a "junkyard" on the premises. Given the significant change in storage by Appellant of his Premises, and for the reasons set forth above, the Trial Court did not err in concluding that Appellant failed to meet his burden of proving that his non-conforming use of the Premises included the limitless storage of disabled and dismantled vehicles outside, and not in an enclosed area for only a 60 day period of

20

time.  *Marple Gardens, Inc. v. Zoning Bd. of Adjustment*, 303 A.2d 239, 241 (Pa. Cmwlth. 1973) (the landowner must demonstrate that the property is subjected to a hardship that is unique to that property, as distinguished from the hardship arising to the owner of the property).

Finally, Appellant argues that because Appellant has a right to petition for expansion of his non-conforming use through the Ordinance, the Trial Court erred when it limited his non-conforming use until further order of court.  The language of the Trial Court's order states: "[t]his ORDER [of April 25, 2017 with the filing date of April 26, 2017] shall remain in effect until further order of the court."  C.R., Item No. 12, at 10.  Appellant argues that this language deprives him of the right to expand, change, or improve his non-conforming use of the Premises.  Appellant asserts he has the right under Section 502 of the Ordinance (pertaining to the continuation of a non-conforming use) *to expand* his non-conforming business use.

Appellant also maintains that he has a right to expand his non-conforming use of the Premises pursuant to the doctrine of Natural Expansion relying on this Court's holding in *Hunterstown Ruritan Club v. Straban Township Zoning Hearing Board*, 143 A.3d 538 (Pa. Cmwlth. 2016).  Appellant's reliance on this case is misplaced.

In *Hunterstown Ruritan Club,* this Court held that a zoning ordinance cannot limit a non-conforming use to the degree which existed on the date of the enactment of the ordinance.  However, we further explained that "the right to natural expansion is not unlimited and municipalities may impose reasonable restrictions on expansion of non[-]conforming uses."  *Id*. at 546.  For example, an expansion of a non-conforming use may not be detrimental to the public health, welfare, and safety.  Thus, "'conditions on the land associated with the protected use' may be subject to

21

reasonable regulation." *Id*. at 546. A zoning board has continuing authority to place reasonable restrictions on a non-conforming use. *Id*.

Here, the Trial Court recognized the nature of Appellant's business, but nevertheless concluded that:

> [t]he testimony established that at various times throughout the pendency of this litigation, [Appellant] used [the Premises] to store what can only be described as 'junk' consisting of discarded building materials, car parts, parts of motor vehicles which were neither operable nor properly registered or inspected, and other items. The storage of these items lasted in excess of a year.

Trial Ct. Op., 4/26/17, at 7.

In banning junkyard conditions from the Premises, the Trial Court is not preventing Appellant's right of natural expansion, but rather is clearly regulating the conditions of the Premises to bring the Premises in line with the non-conforming use as an automobile sales and repair business.

For all the reasons cited herein, the Trial Court Order is hereby affirmed.

_____
ELLEN CEISLER, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Old York Homes One General   :
LLC, trading as Old York Homes  :
One Limited                 :
                         :
     v.            :  No. 968 C.D. 2017
                         :
Jeff R. Bressler, d/b/a Jeff's Auto  :
Sales,                    :
         Appellant    :

## O R D E R

AND NOW, this 24th day of May, 2018, the Order of the York County Court of Common Pleas, dated June 20, 2017, is hereby AFFIRMED.

_____
ELLEN CEISLER, Judge